UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL CARO,<br><br>           Plaintiff,<br>v.<br><br>DAVID WEINTRAUB, ET AL.,<br><br>           Defendants. | 3:10-CV-00284 (CSH)<br><br>May 4, 2012 |

## RULING

In February 2010, Plaintiff Marshall Caro filed a Complaint in Connecticut Superior Court for the Judicial District of Stamford against Defendants David Weintraub and Eric Weintraub, alleging that Defendants violated certain sections of Connecticut General Statutes § 53-451, which defines certain "Computer Crimes" in § 53-451(b). C.G.S. § 53-452(a) provides a private right of action against violators of § 53-451(b) "to enjoin further violations and to recover the actual damages sustained by reasons of such violation and the costs of the civil action."

Defendants removed the action to this Court by Notice of Removal [Doc. 1] which specified diversity of citizenship under 28 U.S.C. § 1332 as the sole basis for federal subject matter jurisdiction. There is now pending a motion by Plaintiff for an order compelling the withdrawal of Defendants' counsel, which Defendants oppose. The motion is fully briefed, but the Court defers decision and instead raises *sua sponte* the question of whether the diversity statute applies to the case. If it does not, the Court lacks subject matter jurisdiction, and its only proper course would be to dismiss the action without prejudice.

1

Two issues arise with respect to diversity jurisdiction. First, Plaintiff's Complaint [Doc. 1-1], from which the relevant allegations are derived, does not adequately allege federal diversity jurisdiction. Second, it is questionable whether "the matter in controversy" pleaded in the Complaint [Doc. 1-1] "exceeds the sum of $75,000, exclusive of interest and costs," as required by 28 U.S.C. § 1332(a) for diversity jurisdiction to exist.

I will consider these questions in order. However, it is necessary to begin with a description of the parties, their relation to each other, and the nature of Plaintiff's claim against the Defendants.

**I**

The following account is derived from the parties' written submissions in this case, and in a companion case between the same parties bearing Docket Number 3:09-cv-1353, presently pending before Judge Chatigny ("the Companion Case"). This Court has reviewed the file in the Companion Case.

Plaintiff Marshall Caro ("Marshall") and his late wife Elizabeth Caro ("Elizabeth") were married in October 2001.[1]  They purchased a home located at 47 Angelus Drive in Greenwich, Connecticut. Defendants David Weintraub ("David") and Eric Weintraub ("Eric") were the natural sons of Elizabeth from a prior marriage. Elizabeth had a brother named Thomas Corrigan, who is married to Lynn Corrigan. The Corrigans are uncle and aunt to David and Eric.

In early 2007, Elizabeth was diagnosed with Stage IV lung cancer. She died on February 6,

---

[1] The Court refers to the individuals involved in the case by their first names for the sake of clarity and brevity.

2008, without having left a will. Since then, Marshall on the one side, and David and Eric on the other, have engaged and are engaging in a series of litigated cases before the Connecticut probate court, this Court, and the Second Circuit. To say that there is animosity and distrust between Marshall and the Weintraub brothers understates the matter. It may be fairly inferred from the facts that this multi-tiered litigation is fueled by the parties' competing interests in Elizabeth's estate.

This case and the Companion Case arise out of two separate incidents which, for reasons that will appear, I will call "the Recording Incident" and "the Password Incident."

**The Recording Incident** involves events occurring during the afternoon of February 2, 2008.[2] Elizabeth was frail from the ravages of cancer (she died four days later) and on several medications. Marshall was caring for her at their 47 Angelus Drive, Greenwich home. Suddenly, unannounced and uninvited visitors arrived at the home: they were David and his wife Michelle; Eric and his wife Jennifer; and Thomas and Lynn Corrigan. Marshall seated the Corrigans, who entered first, in the kitchen, went to the bedroom, awakened Elizabeth, placed her in a wheelchair, and brought her into the kitchen. Lynn Corrigan launched an effort to persuade Elizabeth to sign a draft will prepared by Thomas Corrigan, instead of a will prepared by Cummings and Lockwood, attorneys retained by the Caros. Thomas Corrigan's draft will was more favorable to the Corrigans and the Weintraubs than the Cummings draft. (In the event, Elizabeth died intestate.) Elizabeth resisted the Corrigans' urgings. While this conversation was in progress, David and Eric entered the kitchen. They did not participate in the discussion, but David managed to use a device and make a surreptitious recording of the conversation, without the knowledge or consent of Elizabeth or

---

[2] The account in this paragraph in the text is adapted principally from Plaintiff Caro's Amended Complaint in the Companion Case [Doc. 134].

Marshall. Marshall alleges that David and Eric made use of that recording, which damaged Marshall in the ongoing litigation after Elizabeth's death.

**The Password Incident** involves events occurring during one or more of several visits David and Eric made to the Caro home following Elizabeth's February 6, 2008 death.[3] During at least one of those visits, Eric asked permission to use a laptop computer owned by Marshall which Elizabeth had used to maintain personal and financial files. Marshall granted Eric permission to use the computer for the purpose of checking Eric's personal e-mail. Marshall thought no more of it until February 14, when he attempted to access Elizabeth's e-mail account and discovered that its password had been changed, so that he could not gain access. Marshall alleges that Eric, surreptitiously and without Marshall's knowledge or consent, changed the password for the late Elizabeth's computerized e-mail account, and that thereafter Eric and David changed or deleted certain loan and financial records, which damaged Marshall in various ways.

II

Elizabeth having died before making a will, her estate will be distributed in accordance with Connecticut's law of intestate succession, as administered by the state Probate Court. Not surprisingly, Marshall, David and Eric are presently engaged in strenuous litigation before that court. I need not recount the status of the state actions, to the extent they are revealed by the record in this federal case. The series of federal actions, pitting Marshall as plaintiff against David and Eric as defendants, require a closer look.

In the first of those actions, Marshall sued David and Eric, their lawyer Glenn W. Dowd, and

---

[3] The account in this paragraph in text is adapted primarily from Plaintiff Caro's Complaint in the captioned action [Doc. 1-1].

Dowd's law firm, Day Pitney LLP, in this Court, Docket No. 3:09-cv-335 ("Federal Action I"), alleging a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510-21 (the "Wiretap Act"), together with pendent state law claims. Specifically, Marshall's Complaint alleged that David's surreptitious recordings of the February 2 kitchen conversation about the form Elizabeth's will should take (what I have called "the Recording Incident"), and David's subsequent use of that recording during a Probate Court hearing, violated the Wiretap Act, and also gave rise to a number of state law tort claims. Judge Dorsey dismissed the federal claim in an opinion reported at 2009 WL 2358919 (D. Conn. July 31, 2009), on the ground that the recordings did not fall within the Wiretap Act. He declined to exercise supplemental jurisdiction over Marshall's state law claims. Marshall appealed, appearing *pro se* before the Second Circuit, which affirmed dismissal of the action in an opinion dated August 13, 2010 and reported at 618 F.3d 94 (2d Cir. 2010).

The Second Circuit's opinion makes it plain that Federal Action I was concerned solely with Marshall's allegations against David and Eric which arose out of the Recording Incident.

On August 26, 2009, less than a month after Judge Dorsey dismissed Federal Action I, Marshall appearing *pro se* filed an action in this Court, Docket No. 3:09-cv-1353 ("Federal Action II"), against David and Eric. Diversity of citizenship is the asserted basis for federal jurisdiction. The case was assigned to District Judge Droney (as he then was), reassigned to Judge Dorsey, and thereafter reassigned to Judge Chatigny, who is now presiding over it. After considerable motion practice, Marshall filed a *pro se* Amended Complaint [Doc. 134] which contains factual allegations concerning both the Recording Incident (¶¶ 19-28) and the Password Incident (¶¶ 30-37). The Amended Complaint demands damages in the amount of $1,194,697.00, without alleging

specifically how those damages are calculated. Marshall's *pro se* Trial Memorandum [Doc. 175] in Federal Action II indicates that he intends to offer proof with respect to both the Recording and Password Incidents.

On February 3, 2010, after Judge Dorsey dismissed Federal Action I and the appeal in that case was pending, Marshall filed an action against David and Eric in the Connecticut Superior Court. The Complaint was drafted by Mark F. Katz, Esq., Marshall's attorney. The factual allegations relate solely to the Password Incident. The gravamen of the case is expressed in ¶ 31 of the Complaint: "In performing the aforesaid actions in changing the password of the email account of Elizabeth Caro and deleting the various computer files and records described hereinabove, the defendants David Weintraub and Eric Weintraub violated one or more of the sections of Connecticut General Statute § 53-451(b)." The Complaint prays for "money damages" and an order pursuant to C.G.S. § 53-452 "enjoining the defendants and each of them from continuing to access the email account of Elizabeth Caro." Defendants removed the case to this Court on the ground of diversity of citizenship, which thereupon became "Federal Action III." Mr. Katz has withdrawn from the case and Marshall is now proceeding *pro se*.

### III

#### A

In removing this action from state court on the basis of diversity of citizenship, the Defendants rely upon the allegations of Plaintiff's Complaint in that court. The relevant allegations relate only to the *residences* of the parties, which Defendants seemingly equate with *citizenship*. Thus, the Notice of Removal [Doc. 1] says at ¶ 3(a): "Plaintiff is an individual residing in Greenwich, Connecticut (citing the Complaint), and thus is a citizen of Connecticut for the purposes

of 28 U.S.C. § 1332." Equally simplistic and erroneous assertions are made with respect to Defendants David and Eric Weintraub, said to be citizens of New York or New Jersey respectively because the Complaint alleges that each is a "resident of" or "resides in" one or the other state. *Id*.

The diversity statute requires that the controversy be between "citizens of different States." 28 U.S.C. § 1332(a)(1). In the case at bar, Defendants' assertions of citizenship based on residence are erroneous because in applying the statute, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Cas. Ins. Co.*, 126 F.3d 100, 102-103 (2d Cir. 1997), *citing Leveraged Leasing Admin. Corp. v. PacifiCorp Capital*, *Inc*., 87 F.3d 44, 47 (2d Cir. 1996). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). While an individual may have several residences, he or she can have only one domicile. *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992). *See also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (for jurisdictional purposes, "'domicile' is not necessarily synonymous with 'residence,'" and "one can reside in one place but be domiciled in another" (citations omitted)).

In fairness, Plaintiff cannot be taxed with the inadequacy of his pleading in this respect, because he wished to bring his case against Defendants in the state court, and did so. It is Defendants who removed the case, purportedly under the diversity statute, and accordingly Defendants, as the proponents of diversity jurisdiction, must show it exists. For the reasons stated, the allegations in the Complaint upon which Defendants rely for that purpose are inadequate to the task. If this case is to continue in this Court, Plaintiff and Defendants will be required to furnish sworn statements reciting whether, on February 3, 2010, when the state court action was filed, they maintained residences in any states other than Connecticut, New York or New Jersey, respectively.

If their responses are uniformly "no," that is an end to the matter, and this element of diversity is established. If any answer is "yes," there will have to be a further inquiry.

B

It may not be necessary to pursue the subject discussed in Part III.A., because Defendants may not be able to satisfy another prerequisite of federal diversity jurisdiction: that of the jurisdictional amount.

Diversity jurisdiction requires a "matter in controversy" that "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The phrase "sum or value" indicates that the jurisdictional amount may be satisfied by a claim at law for money damages in a discernible *sum*, or a claim for equitable relief of a discernible *value*. "Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87-88 (2d Cir. 1991) (citations omitted). In the case at bar, Marshall sues David and Eric for both money damages and an injunction.

When, as here, a defendant in a state court action removes the case to federal court on the ground of diversity, he "has the burden of proving that it appears to be a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (citations and internal quotation marks omitted). "To determine whether that burden has been met, we look first to the plaintiffs' Complaint and then to Akzo's petition for removal." *Id*. Accordingly, in the instant case the Court looks first to Marshall's Complaint in the state court, and then to the Notice of Removal by which David and Eric brought the case here.

As for the Complaint: I noted *supra* that the factual allegations in the Complaint relate solely to the Password Incident. Specifically, ¶¶ 14-17 describe the manner in which David and Eric visited Marshall at the Greenwich home after Elizabeth's death, and Eric obtained seemingly innocent access to Elizabeth's laptop computer. ¶¶ 18-22 describe the circumstances from which Marshall infers, and alleges upon information and belief, that David and Eric changed the password to Elizabeth's e-mail account and accessed that account "on one or more occasions." ¶ 26 alleges that the files on Elizabeth's computer included "records of loans made by Elizabeth Caro to the defendants David Weintraub and Eric Weintraub, as well as records of their repayments to her." ¶ 27 alleges that the files also included "records pertaining to the partnership in which the plaintiff and Elizabeth Caro had purchased their Greenwich home, including capital contributions from each of them, and contributions of each of them to the expenses of owning and maintaining their said residence." ¶¶ 28-30 describe Marshall's discovery that "various financial data in the form of spreadsheets, including those described in the two immediately preceding paragraphs, had been deleted," and ascribe those deletions to David and Eric. ¶ 31 charges David and Eric with violating the Connecticut Computer Crimes statute by "performing the aforesaid actions in changing the password of the email account of Elizabeth Caro and deleting the various computer files and records described hereinabove." To reiterate: Marshall's Complaint in this case relates solely to the Password Incident, comprised of Defendants' wrongfully obtained access to Elizabeth's computer records and e-mail account, and the wrongful deletions from computer files made possible by that access.

As for the Notice of Removal: the Defendants sensibly read the Complaint as referring only to the Password Incident. The Notice says in ¶ 3(b):

> In his State Court Complaint, Plaintiff alleges, *inter alia*, that Defendants unlawfully accessed a laptop computer he purportedly owned and that they deleted certain electronic information saved on the computer. Plaintiff claims that Defendants deleted information that evidenced: (a) loans Elizabeth Anne Caro, Defendants' deceased mother and Plaintiff's former wife, purportedly made to them that remain outstanding; and (b) an alleged partnership arrangement between Plaintiff and Mrs. Caro concerning the ownership of Mrs. Caro's home in Greenwich, Connecticut. Plaintiff apparently seeks money damages arising not only from Defendants' alleged unauthorized access of such information, but consequential damages arising from Defendants' alleged deletion of such information from the computer.

(citations to Complaint omitted).

Defendants' Notice of Removal accurately summarizes Plaintiff's claim, as expressed in the Complaint. The question for purposes of the present jurisdictional analysis is whether the removing Defendants, as proponents of federal diversity jurisdiction, can carry "the burden of proving that it appears to be a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher*, 216 F.3d at 296. The statutory jurisdictional amount is $75,000.

On the present record, the reasonable probability is that the conduct of David and Eric in connection with the Password Incident did not cause Marshall provable money damages in excess of $75,000. Two sorts of wrongful conduct are alleged: gaining access to Elizabeth's computer; and thereafter, deleting electronic files with respect to two subjects – Elizabeth's loans to David and Eric, and Elizabeth's joint purchase with Marshall of the Greenwich property. Neither seems a likely source of significant money damages.

As for wrongful access: Marshall apparently retained the computer Elizabeth used; there is no suggestion that David or Eric took it away with them after their visit. Once alerted to the fact that the computer's e-mail account password had been changed, no reason appears why Marshall, as

owner and possessor of the computer, could not change the password back again, or block its use. A more detailed account of the password and computer is found in Marshall's Amended Complaint in Federal Action II, [Doc. 134] at ¶¶ 33-34:

> On the 14th of February, 2008, Plaintiff accessed this computer and discovered that the browser was no longer able to automatically log into Elizabeth's email account provided by Google Inc. The browser's home page was still set to www.gmail.com, but the password stored by the browser for this URL [Uniform Resource Locator – the web address] was no longer valid for her account – the password had been changed. It could only have been changed by someone operating this computer. The only person who had operated this computer since Elizabeth's death was Defendant Eric Weintraub.
>
> Plaintiff drafted an email (attached as Exhibit 3) to Elizabeth's email address (msliz.caro@gmail.com) to demand that whoever had current access to this email account should immediately restore the original password. Plaintiff then realized that although Defendant Eric Weintraub could and would read this email, he would have no ability to comply because he didn't know the original password. Plaintiff therefore did not send this email, expecting to meet with Defendant.

That meeting never transpired. However, one may reasonably assume that Marshall knew the original password and could "immediately restore the original password." No doubt, his discovery that Eric had changed the original password vexed Marshall, but it is not at all clear how or if that change caused Marshall economic damage.

As for deletion of the computer's loan and property purchase electronic files: such deletions, while wrongful, would not seem to be *per se* compensable in money damages. The issue would seem to be whether the deletion of those files deprived Marshall of material or evidence that he needed and caused him economic loss. There is no readily discernible reason to believe that, in addition to his own testimony, Marshall does not have evidence from other sources available to him on the two transactions in question. Indeed, as enclosures to a letter dated October 22, 2008 to John

Meerbergen, the Temporary Administrator of Elizabeth's estate [Doc. 1-2], Marshall forwarded detailed statements of loans made to David and Eric and their repayments (none are listed), leaving Eric with a balance due of $34,075.21 and David with a balance due of $18,450. Marshall says in his letter to Meerbergen: "I attach hereto proofs of the distributions of the funds as detailed in Liz's accountings (spreadsheets) of these loans." Whatever David and Eric may have deleted about these loans from Elizabeth's computer after she died in February 2008, Marshall had the relevant details at his command in October 2008. As for the financial arrangements between Marshall and his late wife for the purchase and maintenance their marital home, Marshall can testify to the facts, and it is likely that corroboration may be found in bank checks, documents generated by the property, and other sources.

As for the Complaint's request for an order "enjoining the defendants and each of them from continuing to access the email account of Elizabeth Caro," that equitable relief must be valued for jurisdictional purposes, as stated in *A.F.A. Tours*, 937 F.2d 82. The present record does not allow for a meaningful assessment of whether that continued access is possible at all, and if it is, the existence and extent of any economic damage such use may inflict upon the Plaintiff.

**IV**

It should be understood that in raising these questions, I do not undertake to answer them. This Ruling is intended to do no more than indicate the present uncertainty as to diversity jurisdiction, and give directions for the resolution of that uncertainty. The relevant issues have not been previously briefed by Marshall or counsel, because the Court is raising them for the first time *sua sponte*.

Since it is clear that the present action in this Court is concerned solely with the Password

Incident, and has nothing to do with the Recording Incident, the requisite amount for diversity jurisdiction must be proven with respect to the Password Incident only, entirely without regard to whatever damages Marshall may suffer as a result of the Recording Incident. Both incidents appear to be implicated in Federal Action II, pending before Judge Chatigny, and I say nothing further about that case in this Ruling. If it should appear that diversity jurisdiction does exist in this case, then a question may arise as to whether Marshall can properly assert the same claims arising out of the Password Incident in two separate actions.

To address the question of diversity jurisdiction in this case, the Court directs that, on or before May 25, 2012, the parties file and serve the following written submissions:

(1) Affidavits executed by each of the three parties, stating the addresses of any and all residences they may have been maintaining on February 3, 2010.

(2) Affidavits or briefs setting forth with precision the sums or values that the parties contend are at issue in this action, as the result of the conduct of the Defendants alleged in the Complaint and Plaintiff's claims based upon that conduct.

Until the Court decides whether or not diversity jurisdiction exists in this case, decision on the motion for the withdrawal of Defendants' counsel is RESERVED, and all proceedings in the case are STAYED.

It is SO ORDERED.

New Haven, Connecticut
May 4, 2012

                                                          /s/ *Charles S. Haight, Jr.*
                                                          Charles S. Haight, Jr.
                                                          Senior United States District Judge